IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**NORA HOUSTON**                                                                                          **PLAINTIFF**

**VS.**                                                                          CIVIL ACTION NO.: 3:13cv773 DPJ-FKB

**MISSISSIPPI DEPARTMENT OF HUMAN SERVICES**                             **DEFENDANT**

### COMPLAINT

### JURY TRIAL REQUESTED

**COMES NOW** the Plaintiff, **NORA HOUSTON**, by and through counsel, and files her *"Complaint"* against the Defendant, **MISSISSIPPI DEPARTMENT OF HUMAN SERVICES**, and would show unto the Court the following, to wit:

1. That Plaintiff, **NORA HOUSTON**, (hereinafter sometimes referred to as "Plaintiff" or "Plaintiff Houston") charges that this is an action for injunctive and declaratory relief and damages to redress unlawful discrimination and deprivation of employment benefits; retaliation in violation of the *Family Medical Leave Act of 1993, as amended* (hereinafter referred to at times as the "**FMLA**"); for racially hostile work environment and constructive/unlawful discharge; for retaliation in violation of *Title VII of the Civil Rights Act of 1964, as amended* (hereinafter referred to at times as "**Title VII**"); and for violation of the *American Disabilities Act of 1990, as amended* (hereinafter referred to as the "**ADA**").

2. Plaintiff further charges Defendant, **MISSISSIPPI DEPARTMENT OF HUMAN SERVICES** (hereinafter sometimes referred to as "Defendant" or "Defendant MDHS"

or "MDHS") with, *inter alia*, intentional infliction of emotional distress, and retaliatory and unlawful discharge, violation of the provisions governing state service of employees and failing to provide due process as to the grievances of Plaintiff Houston.

## JURISDICTION

3. That jurisdiction of this Court is invoked pursuant to *28 U.S.C. §§ 1331, 1343 and 2201; 29 U.S.C. § 621 et seq.; 29 U.S.C. § 623; 42 U.S.C. § 2000e, et seq.;* and *29 U.S.C. § 2601, et seq.* Jurisdiction over the claims of intentional infliction of emotional distress, breach of contract, and unlawful and retaliatory discharge is by way of supplemental jurisdiction, 28 U.S.C. § 1367. Plaintiff's claims for declaratory relief arise under 28 U.S.C. § 2201 and §2202.

## PARTIES

4. That Plaintiff, **NORA HOUSTON**, is an adult, resident citizen of Hinds County, Mississippi, 146 Patricia Cove, Raymond, Mississippi 39154.

5. That Defendant, **MISSISSIPPI DEPARTMENT OF HUMAN SERVICES**, ("MDHS") is an agency of the State of Mississippi and may be served with process of this Court by serving the agent for service of process as follows: *Honorable Jim Hood*, Attorney General, Mississippi Attorney General's Office, Walter Siller Building, 550 High Street, Suite 1200, Jackson Mississippi.

6. Plaintiff Houston would show that at all material time referred to herein, Defendant MDHS was and is an employer as provided under Title VII, ADA and the FMLA; and that at all material times and during the acts alleged herein, Defendant, acted by and through its designees and agents, including *Takesha Darby*, each who were acting within the purpose and scope of his agency or employment, and their acts and conduct, as alleged herein, were known to,

authorized and ratified by the Defendant, and their actions, as alleged herein, are imputed to the Defendant, MDHS.

## FACTS

7.     That Plaintiff, **NORA HOUSTON**, is a Caucasian female, age forty five (45) at all material times herein, having been born on *June 10, 1968*; and at the time of her unlawful discharge had been employed by Defendant, MDHS for approximately seven (7) years. Plaintiff Houston was a *Financial Coordinator* for the MDHS and at all material times alleged herein, Plaintiff Houston was *supervised* by Ms. Takesha Darby. Ms. Darby is an African American female and she became the Agency's interim Bureau Director in 2012; and she was made permanent Bureau Director of the Defendant MDHS in November 2012.

8.     That Plaintiff Houston performed her duties up to the expectations of management as a *Financial Coordinator* for MDHS. However, beginning in April 2012, Plaintiff Houston complained to management as to her treatment by Ms. Darby. Plaintiff's complaints feel on "deaf ears" at the Agency. Plaintiff Houston was the only Caucasian employee in her section and she complained that other Financial Coordinators within her department were not subjected to the same treatment in the workplace by Ms. Darby. In other words, the terms and conditions of Plaintiff Houston's employment were different and she was subjected to disparate treatment.

9.     In April 2012, Ms. Darby placed Plaintiff Houston on a Performance Improvement Plan ("PIP"). The PIP was contrary to the policies and procedures of the Agency and retaliatory.

10.    At this point in time, Plaintiff Houston complained to management email of May 4, 2012, that she was being "constantly targeted" by her supervisor, Ms. Darby and that she was

subjected to harassment in the workplace. Plaintiff Houston told management that it was "really hard to do her job." Plaintiff Houston claimed that she had "far too much work to handle daily and that stress is not fair."

11. Plaintiff Houston would show that after her complaints to management, the PIP was "*scraped*" by Ms. Darby and Plaintiff Houston was released from having to comply with the PIP. Plaintiff Houston complained to management as to this "PIP" and she filed internal grievances in April 2012 and August 2012 as to her treatment in the workplace. However, no Agency decision was reached as to the grievances of Plaintiff Houston in 2012.

12. Plaintiff Houston, believing that the PIP was discriminatory, and that she was the only employee that was being counselled and written up, filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") against the Agency. Plaintiff Houston claimed that she had been placed on a PIP as harassment and without prior knowledge or any disciplinary action. Plaintiff Houston claimed that she was the only Caucasian employee on her team; and that she had been subjected to disparate treatment on the basis of her race and retaliation for having engaged in a protected activity and opposing this disparate treatment under Title VII.

13. Plaintiff Houston's charge filed on or about *September 30, 2012* was based, *inter alia*, upon disparate treatment in the workplace by her supervisor, Takesha Darby. **Charge No. 423-2012-02127.** Plaintiff Houston was provided a right to sue and rather than file a lawsuit, she hoped that the situation would improve after having made a report to the Agency and to Human Resources with the Agency.

4

14. After the issuance of the right to sue in *Charge No. 423-2012-02127*, the working conditions and treatment in the workplace became worse. The Defendant MDHS allowed Plaintiff Houston to be subjected to retaliation and reprisal as a result of my engaging in a protected activity under Title VII for having filed my initial charge of discrimination in September 2012.

15. After the issuance of the right to sue and after the EEOC closed the investigation, MDHS continued to allow Ms. Darby to continue to make demeaning comments to me that Plaintiff Houston was "stupid" and that she "just could not get it" and that she needed professional help as a result of my being "slow" and being "mentally challenged" according to Ms. Darby. Ms. Darby *perceived* Plaintiff Houston as suffering from a disability that impacted her ability to do her work. Darby's remarks were no more than **_bullying_** that exhibited a racial and insensitive animus on the part of Darby.

16. Plaintiff Houston was made to do things that no one that did work similar to her had to do such as signing in and out when she left her desk; having to provide medical excuses in advance; having weekly meetings with Ms. Darby that did nothing other than allow her to demean me and subject me to harassment in the workplace. Plaintiff's working conditions went from "bad to worse" in late 2012 and early 2013; and after she took leave under the FMLA.

17. Plaintiff Houston would show that on or about *October 11, 2012* she took leave under the FMLA as a result of the illness/surgery of her mother. Plaintiff was her mother's caretaker and after a lengthy illness her mother passed on *March 2, 2013*. Plaintiff obtained donated leave from her state MDHS co-workers to take care of her mother during her last illness.

18. Plaintiff Houston returned to work after her mother's passing on *March 11, 2013*. Plaintiff Houston had returned to work for **_four (4) days_** when given the **_second_** PIP on March

5

*15, 2013* by Ms. Darby.   Plaintiff Houston would show that Ms. Darby made **negative comments** about the leave under the FMLA.  Ms. Darby **blamed** Plaintiff Houston for any backlog of cases as a result of her having to take leave under the FMLA.  These insensitive remarks to Plaintiff Houston were no more than *"bullying"* on the part of Ms. Darby in the workplace.   Ms. Darby continued to demean and criticize the work of Plaintiff Houston especially when management of the Agency/MDHS **did nothing** to address the grievances of Plaintiff Houston.  The actions on the part of Ms. Darby were intentional and calculated and management did nothing to address the racial work environment of Plaintiff Houston.

19.   On or about *April 22, 2013*, Plaintiff Houston filed **another** internal grievance with her former employer, MDHS, regarding her hostile working conditions and the PIP.  The Agency did not properly address her concerns as to the racially hostile working environment; or the harassment that Plaintiff Houston was subjected to in the workplace.  Management of the MDHS simply failed to stop the harassment by her supervisor, Takesha Darby, and Darby's bombarding her with demeaning insults at work and making her work environment more hostile.

20.   Plaintiff Houston would show that the Defendant, MDHS was aware of the harassment in the workplace by Ms. Darby and the racially hostile work environment, but simply failed to take any remedial action.  Ms. Darby was allowed by the Agency/MDHS to take tangible employment action against Plaintiff Houston, make her working conditions intolerable, and subjected her to working conditions that she had no alternative but to resign.  *Vance v. Ball State Univ., 133 S. Ct. 2434, 2013 U.S. LEXIS 4703 (2013).*

21.   Plaintiff Houston's last grievance was again ***never addressed*** by the Director, Mark Smith, and the last member of management that "signed off" on the grievance was Ms. Shackelford on May 10, 2013.  Plaintiff Houston was told that "something would be done" but

6

that did not happen. Director Smith met with Plaintiff Houston on or about *May 12, 2013* and he made promises to address the Darby issue, harassment and racially hostile work environment.

22. Plaintiff Houston would show that from May 10, 2013 to June 28, 2013, she was subjected to *more* ridicule and *more* harassment by Ms. Darby; and as a result of Plaintiff Houston's working conditions became so intolerable she had no alternative but to resign her employment. Defendant MDHS simply failed to act despite Plaintiff Houston's pleas help and for relief, including a transfer. Plaintiff Houston was under the constant fear of threats to terminate her employment with the MDHS by Ms. Darby. As a result, Plaintiff Houston was constructively discharged by her former employer, Defendant MDHS.

23. During the last months of her employment, Plaintiff Houston continued to be "*singled out*" by management - *Ms. Darby* - by having to sign in and out when leaving the office, submitting weekly and monthly reports, reporting my whereabouts during the work day, and having Friday meetings with Ms. Darby. No other similarly situated employees have been subjected to this kind of treatment. Plaintiff Houston had to *sign out* whenever she left her desk; and when she took breaks. No other employees similar to Plaintiff Houston – Jennifer Johnson, Virginia Coleman, Tasha Jackson, or Brenda Speaks- were treated the same or like Plaintiff Houston.

24. In addition, Ms. Darby made statements during our Friday meetings, and at other times, that she perceived me as being disabled. Ms. Darby constantly made remarks to me that I was either stupid or needed psychiatric help. I am not disabled, but my supervisor, Ms. Darby, made references as to my emotional status. At this time, the agency was polluted with discrimination, and management simply ignored the most obvious – emotional and physical damage to a long term employee of the agency.

25.     Plaintiff Houston claims that she has been discriminated against on the basis of my race because African American employees have been treated differently than her. African American employees that are in similar positions have not been subjected to the same terms and conditions of employment; and the harassment in the workplace has been "sufficiently severe or pervasive to alter the conditions of employment and create and abusive atmosphere," (2) the alleged harassment was and is "imputable to the employer," and (3) that the MDHS was guilty of negligence in the its handing of Plaintiff Houston's complaints. *Hoyle v. Freightliner, LLC, 650 F.3d 321, 331, 335 (4th Cir. 2011)* (setting forth the elements of a Title VII hostile work environment claim); and the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)*.

26.     Plaintiff Houston also claims that she has been retaliated against for having engaged in a protected activity – filing of her prior charge with the EEOC in 2012. Other employees have not been subjected to such treatment; and they have not been subjected to the same terms and conditions of employment as Plaintiff Houston; and that there was no legitimate reason to treat me with disrespect and continued racially hostile working environment but for Plaintiff Houston having engaged in a protected activity - filing of a charge with the EEOC – and opposing her discriminatory treatment in the workplace.

27.     Plaintiff Houston is seeking any and all relief available to me under Title VII, including back pay; and any other damage to which she is entitled under Title VII including attorney's fees and costs incurred in bringing this civil action against her former employer; and

any and all relief available under the ADA; and Plaintiff Houston is seeking the requested **_injunctive relief_** to be free from any and all retaliation and/or reprisal following reinstatement by the MDHS.

28.     Other employees that were similarly situated to Plaintiff Houston were not punished similarly; not subject to the same terms and conditions of employment, and not disciplined for work deficiencies, not placed on a "PIP" by supervisor Darby and some not disciplined at all by Darby. *See: Green v. Armstrong Rubber Co., 612 F.2d 967, 968 (5th Cir. 1980); Simmons v. Rothe Dev., Inc., 952 F. Supp. 486, 490 (S.D. Tex. 1997); Thornton v. Neiman Marcus, 850 F. Supp. 538, 542-43 (N.D. Tex. 1994). See also Brown v. A. J. Gerrard Mfg. Co., 643 F.2d 273 (5th Cir. 1981); Little v. Republic Refining Co., Ltd., 924 F.2d 93, (5th Cir. 1991); Smith v. Wal-Mart Stores, 891 F.2d 1177 (5th Cir. 1990); Davin v. Delta Air Lines, Inc., 678 F.2d 567 (5th Cir. 1982).*

29.     The actions of the Defendant, MDHS were cold, calculated, premeditated, and in gross violation of any rights of Plaintiff Houston to be treated with decency as a long time employee of Defendant MDHS. ***White v. Monsanto, 585 So. 2d 1205, 1210 (La. 1991).***

30.     That the Defendant MDHS failed to properly address the complaints made by Plaintiff Houston; and failed to take **_immediate action_** as to Ms. Darby. As a result of the inaction on the part of the Agency, Plaintiff Houston was caused to suffer injury, damage and harm; humiliation and to be constructively discharged by the Agency.

31.     Plaintiff Houston would show that on her last day at work that she was **"*bullied*"** by Ms. Darby making it necessary for her to take bathroom breaks to regain her composure and for her sister to come to the office and to check on her well-being. The Defendant MDHS turned a "**_blind eye_**" on the situation in the workplace, allowed the **_bullying_** to continue, and failed to act

upon her grievance. Plaintiff Houston, in her emotional fragile state, had to complete an *exit interview* before she could leave work on June 28, 2013 – her last day on the worksite.

32. Plaintiff Houston, believing that she had, *inter alia*, been subjected to discrimination in the workplace in violation of Title VII and the ADA, filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC) against the Defendant MDHS, on or about *July 29, 2013*, Charge Number 423-2013-01751.

33. Plaintiff Houston was issued her *"Notice of Suit Rights"* from the EEOC on or about *September 16, 2013* in regard to her claims of discrimination under Title VII and the ADA against Defendant MDHS.

34. That Plaintiff Houston has complied with all judicial prerequisites prior to the filing of this action based upon her Title VII and the ADA claims and that she is doing so in a timely manner and in accordance with her "right to sue" and within ninety (90) days of her receipt of such notice.

35. Plaintiff Houston is seeking any and all relief available to her under federal law, and in particular the FMLA, ADA and Title VII, including but not limited to back pay, actual and compensatory damages, attorney fee's and re-instatement to her former position that she held prior to her termination; and any other relief available to Plaintiff Houston or to which she is entitled under the ADA, FMLA and Title VII; and for the retaliation she was subjected to in violation of Title VII that resulted in her unlawful termination and constructive discharge by the Agency on June 28, 2013.

36. In the case, *sub judice*, the acts of Defendant MDHS were with such lack of regard for the life and health of Plaintiff Houston; and as espoused in *Jones v. Flucor Daniel*

*Services, Inc*, 959 So. 2d 1044 (Miss. 2007). See also: ***White v. Monsanto***, 585 So. 2d 1205, 1210 (La. 1991).

## COUNT I

37. Plaintiff Houston re-alleges and hereby incorporates by reference and makes part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of facts contained therein.

38. Plaintiff Houston was unlawfully discriminated against and retaliated against in violation of Title VII; The Supreme Court has long recognized that effective protection against retaliation, the subject of *42 U.S.C. Section 2000e-3(a)*, is essential to securing "a workplace where individuals are not discriminated against because of their racial...status" *Burlington N. & S.F. R. Co. v. White, 549 U.S. 53,563 (2006)*. The mandated reason for the statutory protection is because of "fear of retaliation is the leading reason why people stay silent" about discrimination they have encountered or observed in the workplace. *Crawford v. Metropolitan Government of Nashville & Davidson Cty., 555 U.S. 271, 279 (2009); see also: Price Waterhouse v. Hopkins, 490 U.S. 228, 264 (1989) (O'Conner, J., concurring)*.

39. Plaintiff Houston would show that the as a result of the acts and conduct as alleged herein, Plaintiff seeks any and all remedies and damages available to her as a result of the aforementioned acts and conduct; and that the acts and conduct of Defendant subjected Plaintiff to "retaliation" and she is entitled to receive for these actions any and all relief available to her for violation of Title VII, including but not limited to, back pay and any loss of benefits that Plaintiff suffered as a result of the acts and conducts of the Defendant as alleged herein by Plaintiff Houston.

## COUNT II

40. Plaintiff re-alleges and hereby incorporates by reference and makes part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of facts contained therein.

41. Plaintiff Houston would show that Ms. Darby and the MDHS perceived Plaintiff Houston as being disabled; and regarded her as being disabled. *McInnis v. Alamo Comm. College Dist., 207 F. 3d 276, 281 (5th Cir. 2000).*

42. Plaintiff Houston would show that the Defendant MDHS unlawfully discriminated against in violation of the ADA; and as a result of the acts and conduct as alleged herein, Plaintiff seeks any and all remedies and damages available to her as a result of the aforementioned acts and conduct in violation of the provisions of the ADA, including but not limited to, actual, and compensatory damages as a result of the acts and conducts of the Defendant as alleged herein.

## COUNT III

43. Plaintiff Houston re-alleges and hereby incorporates by reference and makes part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of facts contained therein.

44. Plaintiff Houston was unlawfully retaliated against by Defendant MDHS in violation of the FMLA; that Plaintiff Houston was protected under the FMLA. That Plaintiff engaged in a protected activity by taking leave under the FMLA and that as a result of the acts and conduct as alleged herein, Plaintiff seeks any and all remedies and damages available to her as a result of the aforementioned acts and conduct in violation of the provisions of the FMLA, including but not limited to, actual, compensatory, and liquidated damages as a result of the acts

and conducts of the Defendant MDHS. *Hunt v. Rapides Healthcare Sys., LLC,* 277 F. 3d 757 (5th Cir. 2001); *and Bigge v. Albertsons, Inc.,* 894 F. 2d 1497, 1503 (11th Cir. 1990); *Peters v. Jenny* (327 F. 3d 307 (11th Cir. 2003); *and Smith v. Xerox Corp.,* 602 F.3d 320 (5th Cir. 2010).

## COUNT IV

45.  Plaintiff Houston re-alleges and hereby incorporates by reference and makes a part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of facts contained therein.

46.  The Agency policies and procedures of Defendant MDHS, at all material times, were and are that ***all employees are treated and disciplined the same***, regardless of age, sex or race; and the actions taken in regard to Plaintiff Houston were a violation of those Agency polices; and in violation of the standards of conduct of Defendant MDHS.

47.  The Mississippi Department of Public Safety ("MDPS") is a State agency under the supervision of the State Personnel Board. The purpose of a state-wide system of personnel administration is set forth in *Miss. Code Ann. § 25-9-101*, and the purpose is to establish in the State of Mississippi a system of personnel administration based on sound methods of personnel administration governing the establishment of employment positions, classification of positions and the employment conduct, to build a career service in government which will attract, select and retain the best persons, with incentives in the form of equal opportunities for initial appointment and promotions in the state service; and to establish a *<u>system of personnel management</u>* that will ensure the *<u>effective and efficient use</u>* of employees in the state service.

48.  Plaintiff Houston would show that discriminatory practices in state service are strictly prohibited as set forth in *Miss. Code Ann. §25-9-149*, and it was and is the intent of the Legislature that no person seeking employment in state service, as defined in *Section 25-9-107*,

13

*Mississippi Code of 1972*, or employed in state service, as defined in *Section 25-9-107, Mississippi Code of 1972*, shall be **_discriminated against_** on the basis of **_race_**, color, religion, sex, national origin, age or handicap.

49. Plaintiff Houston would show the Agency and MDHS failed to process her grievances to provide relief in the case, *sub judice*. The inaction and failure on the part of management to address the harassment and hostile work environment was and is contrary to the spirit and intent of state law governing state services of employees such as Plaintiff Houston. As a result, Plaintiff Houston seeks any and all remedies and damages available to her as a result of the aforementioned acts and conduct under Title VII and the ADA, and any other federal law; and that Plaintiff Houston as a result of the unlawful retaliation, is entitled to receive for these actions and all relief available to her for violation of Title VII, and the ADA including but not limited to, back pay and any loss of benefits that Plaintiff Houston suffered as a result of the acts and conducts of the Defendant MDHS as alleged herein violation of Title VII and the ADA.

## COUNT V

50. Plaintiff Houston re-alleges and hereby incorporates by reference and makes a part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of facts contained in said paragraphs.

51. That Defendant MDHS had a duty to fully investigate the allegations and complaints made by Plaintiff Houston and to protect employees such as Plaintiff Houston from harassment of management team members that possess the authority to inflict psychological injury by altering the work environment in objectionable ways.

52. Plaintiff Houston would show that the Defendant MDHS knew about the harassment and failed to take effective action to stop it. *Burlington Indus., Inc. v. Ellerth, 524*

U.S. 742, 759, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998) *(noting that "[n]egligence sets a minimum standard for employer liability under Title VII").*

53.     Plaintiff Houston would show that the Defendant MDHS should not have treated its employees *"like strangers"* especially after being made aware that Ms. Darby was inflicting psychological injury by altering the terms and conditions of the employment of Plaintiff Houston.

## COUNT VI

54.     Plaintiff Houston re-alleges and hereby incorporates by reference and makes a part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of facts contained in said paragraphs.

55.     That as a result of the acts of Defendant, as alleged herein, Plaintiff Houston has suffered from emotional distress; that the emotional distress sustained by Plaintiff Houston is beyond that which a reasonable person could be expected to endure in light of the circumstances surrounding the allegations made herein; and was intentional and beyond that of a normal employment dispute; and that as a result, Plaintiff Houston has suffered damages including, but not limited to the following:

   a.   past, present and future physical pain and suffering which is great and grievous and which will continue indefinitely into the future;

   b.   great emotional and mental suffering and anguish, both past and present, and which is expected to continue into the future indefinitely;

   c.   medical bills, doctor bills, psychologist bills, prescription bills and other medical-related expenses which have been incurred;

   d.   mental anguish, past, present and future;

   e.   loss of enjoyment of life;

   f.   total loss of self-confidence and self-esteem; and

g.   mental anguish to Plaintiff Houston and her family.

56. Plaintiff Houston would show that employers' conduct in the case, *sub judice*, was "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community" as espoused in *Pegues v. Emerson Elec. Co.,, 913 F. Supp. 976 (N.D. Miss. 1996).*

## COUNT VII

57. Plaintiff Houston re-alleges and hereby incorporates by reference and makes a part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of facts contained in said paragraphs.

58. Plaintiff Houston would show that the Defendant and in particular, Ms. Darby, engaged in certain conduct that evokes outrage or revulsion, done intentionally—or even unintentionally yet the results being reasonably foreseeable—that entitle Plaintiff Houston to damages for mental and emotional distress. ***Jones v. Flucor Daniel Services, Inc, 959 So. 2d 1044 (Miss. 2007).***

59. In the case, *sub judice*, the acts of the management of Defendant MDHS were with such lack of regard for the life and health of Plaintiff Houston; and as espoused in *Jones v. Fluor Daniel Services Corporation, supra.* Plaintiff Houston as a long term employee of Defendant MDHS entitled her to… "a greater degree of protection from insult and outrage by a supervisor with authority over him than if he was a stranger." See also: ***White v. Monsanto**, 585 So. 2d 1205, 1210 (La. 1991).*

## PRAYER FOR RELIEF OF NORA HOUSTON

**WHEREFORE, PREMISES CONSIDERED,** based on the foregoing allegations, Plaintiff, **NORA HOUSTON**, respectfully requests this Court to assume jurisdiction over this cause, and upon a hearing of the merits in this cause, grant the following relief:

a. **Order** that the Defendant, **MISSISSIPPI DEPARTMENT OF HUMAN SERVICES**, reinstate Plaintiff Houston to her former position with full back pay, full seniority, all benefits and fringe benefits (and any loss of retirement as a result of Plaintiff Houston having to withdraw her state retirement funds under financial hardship) of that position; or, in the alternative, award Plaintiff Houston future damages of *"front pay"* until the age of Plaintiff Houston's scheduled retirement as a substitute for the remedy of reinstatement to the position that she held at the time of her constructive and unlawful discharge;

b. Award Plaintiff Houston all costs and attorney's fees pursuant to the provisions of *42 U.S.C. § 1988.*

c. Award Plaintiff Houston a judgment, jointly and severally, for ***actual and compensatory damages***, to which Plaintiff Houston is entitled for her injury, damage and loss, as alleged herein, against Defendant, **MISSISSIPPI DEPARTMENT OF HUMAN SERVICES**, in regard to Plaintiff's state law claims in the amount of ***$500,000.00***;

d. ***Order*** Defendant, **MISSISSIPPI DEPARTMENT OF HUMAN SEVICES**, its officers, agents, employees, successors, assigns, and all persons in active concert or participation with them from engaging in any acts to defame the character and reputation of Plaintiff Houston and to ***purge Plaintiff's personnel file*** of any derogatory and false documents;

e. Award Plaintiff Houston all such other relief as may be necessary and proper, and to which she is otherwise entitled pursuant to the provisions of ***Title VII*** for racial

discrimination; and for discrimination under the *ADA*, including liquidated damages; any and all relief that Plaintiff Houston may be entitled under the *FMLA*; and

   f. Award Plaintiff Houston any such other and further relief that she may be entitled to in the premises; and Plaintiff Houston seeks general relief against the Defendant in this action including any and all costs to which Plaintiff Houston may be entitled to recover from Defendant in this action being filed herein.

   **RESPECTFULLY SUBMITTED**, this the 10th day of December, 2013.

           NORA HOUSTON, PLAINTIFF

           BY: JOHN M. MOONEY, JR.,
              HER ATTORNEY

JOHN M. MOONEY, JR.
LAW OFFICES OF JOHN M. MOONEY, JR., PLLC
208 Waterford Square, Suite 100
Madison, Mississippi 39110
Telephone (601) 981-9555
Facsimile (601) 981-7922
**MBIN: 3431**

**ATTORNEY FOR PLAINTIFF, NORA HOUSTON**

### REQUEST FOR TRIAL BY JURY

   **COMES NOW** the Plaintiff, **NORA HOUSTON**, by and through counsel, and respectfully requests this Court to grant her a trial by jury of her peers.

   **RESPECTFULLY SUBMITTED**, this the 10th day of December, 2013.

           JOHN M. MOONEY, JR.,
           ATTORNEY FOR PLAINTIFF