UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

NORA HOUSTON                                                                                      PLAINTIFF

v.                                                                    CIVIL ACTION NO. 3:13cv773-DPJ-FKB

MISSISSIPPI DEPARTMENT OF HUMAN SERVICES                                         DEFENDANT

ORDER

This employment-discrimination case is before the Court on Defendant Mississippi Department of Human Services's ("MDHS") Motion for Summary Judgment [38].  For the following reasons, MDHS's motion is granted as to the state-law claims, Americans with Disability Act claims, Family Medical Leave Act interference claim, and claims related to alleged constructive discharge.  The motion is otherwise denied.

I.       Facts and Procedural History

Plaintiff Nora Houston, a white female, began working as financial coordinator for MDHS in January 2007.  Houston Dep. [38-1] at 2.  In 2012, Takesha Darby, an African-American female, became Houston's direct supervisor.  Def.'s Resps. [43-6] at 1 2.  The two quickly developed issues, and on March 12, 2012, Darby gave Houston a verbal counseling concerning various policy breaches at the workplace.  Verbal Counseling [38-1] at 55.[1]

According to Houston, Darby attempted to place Houston on a Performance Improvement Plan ("PIP") in April 2012.  Darby denies this occurred, Darby Dep. [43-4] at 50, but viewed in a light most favorable to Houston's testimony, Darby prepared the PIP but never completed the

---

[1] Many of the relevant exhibits are attached as exhibits to Houston's deposition and bear multiple exhibit numbers.  Accordingly, this Order provides the ECF page number and a brief description of the document.  Cites to Houston's deposition testimony also utilize ECF page numbers.

process, stating instead, "It's over. Let's start anew." *Id.* Had she given Houston the PIP, it would have violated MDHS policy because Houston had not yet completed a review period under Darby's supervision. Darby Dep. [43-4] at 42.

In August 2012, Houston filed an internal grievance after she lost the right to claim compressed days that allowed her to spend time with her ailing mother. Jackson Dep. [43-1] at 133. This issue was resolved favorably for Houston, and she did not lose ability to take compressed days. *See* Pl.'s Mem. [42] at 32.

On September 30, 2012, Houston filed a Charge of Discrimination with the EEOC, citing the March 12, 2012 verbal-counseling session and the aborted 2012 PIP as instances of racial discrimination. *See* EEOC Charge [38-1] at 60. Less than two weeks later, on October 11, 2012, Houston took leave under the FMLA to care for her mother. Def.'s Resps. [43-6] at 3. During this leave, Darby sent Houston an email instructing her not to contact coworkers seeking donated FMLA leave because it violated agency policy. Email [38-1] at 77. Houston denies that she solicited such donations though she may have mentioned it to at least one coworker. Houston Dep. [38-1] at 47 48.

While Houston's leave continued, her periodic Performance Appraisal Report ("PAR") for the April to October 2012 period became due. *See* PAR [38-1] at 57. Darby completed the report November 5, and it was also approved by Mary Fuller, a white supervisor. In the PAR, Darby gave Houston a 1.28 rating for various deficiencies in her job performance. PAR [38-1] at 57. Any score below a two (2) requires a PIP. Darby Dep. [43-4] at 2.

The PAR and PIP were shared with Houston shortly after her return to work. *See* PAR [38-1] at 57, 61 62. As a result, Houston filed an internal grievance with MDHS, complaining

that she received the PAR and PIP just days after experiencing the anguish of losing her mother and returning to work. Grievance [38-1] at 65. Houston further claimed that Darby's "harassment" and "bullying" caused her to fear for her job. *Id.* at 63 68.

In the last months of her employment, Darby made Houston attend weekly meetings with her and provide memoranda reviewing the topics discussed at the meeting. Darby Dep. [43-4] at 49. Houston also alleges that she was the only employee required to sign in and out. Pl.'s Mem. [42] at 32; *see also* EEOC Charge [38-1] at 73. It is not clear from the record whether these measures were part of the PIP, but they do not appear to be directly referenced in it. *See* PIP [38-1] at 61 62. Finally, Houston claims verbal abuse and bullying, which can be generally described as comments questioning her emotional stability, competence, and intelligence (including calling her "stupid"). *See generally* Houston Dep. [38-1] at 39. Houston ultimately filed a Notice of Voluntary Separation on June 28, 2013, and subsequently filed a Second Charge with the EEOC on July 26, 2013. *Id.* at 69 75. The EEOC issued Houston a right to sue on September 16, 2013. *Id.* at 76.

On December 10, 2013, Houston filed her Complaint [1] in this Court, alleging that MDHS violated her rights under Title VII of the Civil Rights Act of 1964; Title I of the Americans with Disabilities Act of 1990 ("ADA"); and the Family and Medical Leave Act of 1993 ("FMLA"). She also asserted a due-process claim and state-law claims for intentional infliction of emotional distress and violation of provisions governing state service of employees. MDHS has now filed the instant Motion for Summary Judgment [38], and the briefing is concluded. The Court has personal and subject-matter jurisdiction and is prepared to rule.

II.     Standard of Review

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The non-moving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993) (per curiam).

Finally, the Court feels compelled to observe that Plaintiff has failed to fully comply with Rule 56(c)(1), which states that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by (A) citing to *particular* parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." (emphasis added).  Rule 56(c)(3) adds that "[t]he court need consider only the cited materials, but it may consider other materials in the record."  And under Rule 56(e), "[i]f a party fails to properly support an assertion of fact . . . , the court may: . . . (2) consider the fact undisputed for purposes of the motion."

Here, Plaintiff at times fails to provide any record citation.  And when she does offer cites, she sometimes refers to her complaint rather than the record.  As for her record cites, Houston often directs the Court to the wrong exhibit or page number.  Other times, she generically cites excessive page ranges from the depositions without identifying the particular parts that support her statements (one cite, for example, references a nearly 100-page range).  Finally, many of the cites reference documents or testimony that are not in the record at all.

The Court understands the pressures attorneys face, and it generally tries to avoid ad hominem comments.  That said, considerable time has been spent trying to sort through all of this in order to consider the record as a whole.  As often stated, there is no "duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Jackson v. Cal W. Packaging Corp.*, 602 F.3d 374, 379  80 (5th Cir. 2010) (citation and quotation marks omitted).  So to the extent something has been missed, the fault rests with the Plaintiff.

III.     Analysis

Houston's more specific claims seek relief for:  (1) hostile work environment in violation of Title VII; (2) constructive discharge in violation of Title VII; (3) retaliation in violation of Title VII; (4) violation of the ADA; (5) retaliation under the FMLA; (6) interference under the FMLA; (7) intentional infliction of emotional distress; (8) violation of provisions governing state service of employees; and (9) failure to provide due process as to Houston's grievances.  The Court will address each.

A.     Eleventh Amendment Immunity as to ADA, Due-Process, and State-Law Claims

MDHS asserts that it is entitled to immunity under the Eleventh Amendment as to Houston's ADA, due-process, and state-law claims.  "The Eleventh Amendment bars citizens of a state from suing their own state or another state in federal court, unless the state has waived its sovereign immunity or Congress has expressly abrogated it." *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013) (citation omitted).  "[A] state's Eleventh Amendment immunity extends to any state agency or entity deemed an 'alter ego' or 'arm' of the state." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002).  MDHS is an arm of the state of Mississippi, and MDHS therefore has Eleventh Amendment immunity absent waiver or abrogation. *Pollard v. Hinds Cnty. Dep't of Human Servs.*, No. 3:13cv324-DPJ-FKB, 2014 WL 5324384, at *2 (S.D. Miss. Oct. 17, 2014) (citation omitted).

Houston has not argued waiver or abrogation⎯nor could she⎯so these claims are subject to Eleventh Amendment immunity. *See Perez*, 307 F.3d at 326 (affirming dismissal of ADA claim); *Lewis v. Univ. of Tex. Med. Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011)

6

(same as to due-process claim); *Hays Cnty. Guardian v. Supple*, 969 F.2d 111, 125 (5th Cir. 1992) (same as to pendent state-law claims).

Houston does, however, attempt to invoke *Ex Parte Young* with respect to her claim for injunctive relief under Title I of the ADA.  209 U.S. 123 (1908).  The argument fails because *Ex Parte Young* "created an exception to Eleventh Amendment immunity for claims for prospective relief against state officials who have been sued in their official capacities." *Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318, 320 (5th Cir. 2008).  Houston brings no such claims and instead sued an arm of the state.  "When a state agency is the named defendant, the Eleventh Amendment bars suits *for both money damages and injunctive relief* unless the state has waived its immunity." *Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 280 81 (5th Cir. 2002) (emphasis added).  Accordingly, Houston's ADA, due-process, and state-law claims against MDHS are barred, and MDHS's motion on these claims is granted.  The claims are dismissed without prejudice.

> B. Title VII Hostile-Work-Environment Claim

MDHS next argues that Houston has failed to establish a *prima facie* case for relief as to her Title VII hostile-work-environment claim.  "To prevail on a hostile work environment claim, [Houston] must prove that:  1) [she] belong[s] to a protected group; 2) [she was] subjected to unwelcome harassment; 3) the harassment complained of was based on race; and 4) the harassment affected a term, condition, or privilege of employment." *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003).

> Harassment affects a term, condition, or privilege of employment if it is
> sufficiently severe or pervasive to alter the conditions of the victim's employment
> and create an abusive working environment. . . .  In order to deem a work

> environment sufficiently hostile, all of the circumstances must be taken into consideration[,] . . . includ[ing] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (citations and internal quotation marks omitted). "For harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, the conduct complained of must be both objectively and subjectively offensive." *EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007). Significantly, Title VII is not intended to create a "general civility code." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). Thus it does not cover the "ordinary tribulations of the workplace . . . ." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

MDHS's memorandum faithfully recounts the law, but its substantive argument is limited to the following:

> Houston does not offer proof of conduct that can be characterized as "extreme." For example, on June 28, the day of her resignation, Houston had a meeting with Darby and she was critical of Houston's progress. Houston deposition, pp. 161-163. Houston's subjective fear of reprimand rather than "extreme" conduct appears to be the cause of her resignation.

Def.'s Mem. [39] at 7.[2]

MDHS focuses entirely on the severity of the conduct, and the Court agrees that none of the alleged acts—standing alone—were sufficiently severe. But that does not end the inquiry.

---

[2] There are several potential problems with Houston's race-based harassment claim that were not offered as a basis for MDHS's motion. While it is tempting to address them, the moving party must initially "inform[] the district court of the basis for its motion . . . ." *Celotex Corp.,* 477 U.S. at 323. And while the Court may act *sue sponte*, it must give the nonmovant notice and an opportunity to respond. *See Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 445 (5th Cir. 1991). Accordingly, the Court limits review to the issue MDHS raised.

> [T]he test   whether the harassment is severe or pervasive   is stated in the disjunctive. . . . Frequent incidents of harassment, though not severe, can reach the level of "pervasive," thereby altering the terms, conditions, or privileges of employment such that a hostile work environment exists.  Thus, "the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct."

*Lauderdale v. Tex. Dep't of Criminal Justice, Institutional Div.*, 512 F.3d 157, 163 (5th Cir. 2007) (quoting *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991)).

What Houston describes in this case is a series of less severe acts.  In general, she states that Darby:  (1) improperly reprimanded her; (2) falsely accused her of being a liar; (3) falsely accused her of soliciting co-workers to donate their leave time; (4) violated MDHS policy by prematurely placing Houston on a PIP in 2012; (5) constantly told Houston she was "stupid" or had emotional and/or mental issues; (6) singled out Houston by requiring her to sign in and out of work; (7) threatened Houston with the loss of compressed days before higher management stepped in and reversed the decision; (8) singled out Houston by requiring her to attend weekly meetings with Darby during which Darby was verbally abusive and demeaning; (9) forced Houston to prepare weekly memoranda summarizing the meetings; and (10) generally "bullied" Houston in the workplace.

MDHS argues that these facts are "most akin to the behavior found in *Aryain v. Wal-Mart Stores Texas, LP*, 534 F.3d 473, 478 (5th Cir. 2008)."  Def.'s Mem. [39] at 9 (addressing retaliation claim).  Though the facts in *Aryain* seem distinguishable, the Fifth Circuit reversed summary judgment on the sexual-harassment claim, finding issues of fact at the *prima facie* stage.  *Id.*

In this case, the pervasiveness issue has not been addressed, and absent more direct argument, the Court is reluctant to find that the facts — when viewed in the light most favorable to the nonmovant — fail as a matter of law. Finally, "[e]ven if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The Court elects to carry the issue to trial.[3]

### C. Title VII Retaliation Claim

MDHS further argues that Houston has not established a *prima facie* case for Title VII retaliation. "To set out a prima facie case of Title VII retaliation, a plaintiff must show (1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 489–90 (5th Cir. 2014) (internal quotation marks omitted).

MDHS again focuses on a single issue, arguing that Houston fails to demonstrate an adverse employment action under Title VII. To establish an adverse employment action, Houston must show that

---

[3]Because MDHS focuses solely on the severity issue in its opening memorandum, the Court has not evaluated whether the listed issues reflect proper management or a series of trumped up accusations. At a minimum, Darby's supervisor, Michael Gallarno, responded to the conflict by "[e]ncourag[ing] [Darby] to seek training opportunities to better her supervision skills," believing "that she needed more experience as a supervisor." Gallarno Dep. [43-3] at 16. Of course that does not establish that the reprimands and corrections were unwarranted — or that they were based on race — but again those issues were not raised in MDHS's opening brief. Finally, to the extent MDHS touches on causation in its reply, "[i]t is the practice of . . . the district courts to refuse to consider arguments raised for the first time in reply briefs." *Gillaspy v. Dallas Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008) (citation omitted).

>a reasonable employee would have found the challenged action materially adverse, which in this context means that it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. . . .
>
>[P]etty slights, minor annoyances, and simple lack of good manners are not actionable retaliatory conduct; Title VII does not set forth a general civility code for the American workplace. . . . [T]he significance of any given act of retaliation will often depend upon the particular circumstances. Context matters.

*Id.* at 490 (citations and internal quotation marks omitted).

After considerable time and effort, the Court concludes that this claim should also go forward. There is a large body of law addressing Title VII retaliation, and there are any number of legal arguments that could be specifically applied to the facts in this case.[4] But the Court is not willing to make those arguments and apply them to a disputed record without better guidance. As MDHS acknowledges, this is a question of fact that is often decided as a matter of law. Def.'s Mem. [39] at 9. Here, the facts related to this claim largely overlap the harassment claim, so even if summary judgment would be otherwise appropriate, the Court will exercise its discretion and carry the issue forward. *See Firman*, 684 F.3d at 538.

D.  FMLA Retaliation Claim

Houston makes two FMLA-related claims: "Defendant MDHS interfered with her leave under the FMLA and retaliated against her for taking approved leave under the FMLA." Pl.'s Mem. [42] at 34. The first is deficient; the second will proceed to trial.

---

[4] For example, some of the alleged acts predate the protected activity. *See Watkins v. Tex. Dep't of Criminal Justice*, 269 F. App'x 457, 461 (5th Cir. 2008) ("[M]any of the actions Watkins complains of cannot be retaliatory because they predate his participation in any protected activity.").

1.     Interference

Section 2615(a)(1) provides that an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). "The term 'interference with' includes 'not only refusing to authorize FMLA leave, but discouraging an employee from using such leave.'" *Bell v. Dallas Cnty.*, 432 F. App'x 330, 334 (5th Cir. 2011) (quoting 29 C.F.R. § 825.220(b) (2010); *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 51 (8th Cir. 2006)). "With an interference claim, an employee must show that he was denied his entitlements under the FMLA, or, that an employer did not respect the employee's FMLA entitlements." *Id.* (citing *Kauffman*, 426 F.3d at 884).

In this case, Houston seems to premise the interference claim on an email she received from Darby on January 2, 2013, while Houston was on FMLA leave. *See* Houston Dep. [38-1] at 46 (addressing email when asked for basis of claim). The email states in full:

> The agency has received complaints from DHS personnel in regard to you contacting them personally asking them to donate leave on your behalf due to your mother's condition/hospitalization. This is a violation of agency policy and donated leave can and will be withdrawn if you continue to contact employees requesting donated leave. The agency has requested donated leave on your behalf and those who chose to donate their time have graciously done so, efforts on your part to personally contact staff requesting additional donated leave must cease immediately.
>
> While I am praying for your mother's recovery and know that you are concerned about her and your available leave, you must comply with agency policy and be respectful not to offend or infringe upon the rights of other DHS personnel.

*See* Email [38-1] at 77.

Though Houston denies having contacted co-workers to seek donated leave time, she does suggest in her deposition that she may have asked at least one co-worker   who contacted

Houston to donate time. Houston Dep. [38-1] at 48. Regardless, it is difficult to see how this email "interfered with her leave" as she now suggests. Pl.'s Mem. [42] at 34. As MDHS observes, it approved her time and Houston cannot say whether her time was incorrectly calculated. Def.'s Mem. [39] at 15 (citing Houston Dep. [38-1] at 45). Houston offers no evidence in her response showing an actual interference, so this portion of the claim is dismissed.[5]

    2.    Retaliation

"To make a *prima facie* showing of retaliation under the FMLA, [a plaintiff] must show that: (1) she was protected under the FMLA; (2) she suffered an adverse employment decision; and either (3a) that she was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because she took FMLA leave." *Hunt*, 277 F.3d at 768.

Here, Houston mentions the email, the adverse PAR, the April 2013 PIP, and the alleged constructive discharge, "*inter alia*," as constituting retaliation for taking FMLA leave. Pl.'s Mem. [42] at 34–36. MDHS's *only* argument as to this portion of the claim states in full: "She also testified that while it is her personal belief that she was retaliated against for taking FMLA leave, she has no facts to support that claim." Def.'s Mem. [38-1] at 15 (citing Houston Dep. [38-1] at 39).

---

[5]Even assuming MDHS interfered with donated time—which is not established—it would still fail to state an FMLA interference claim. An interference claim requires proof that MDHS interfered with "entitlements under the FMLA." *Bell*, 432 F. App'x at 334. And there is no entitlement to donated leave. *See Rodriguez v. Atria Sr. Living Grp., Inc.*, 887 F. Supp. 2d 503, 517 (S.D.N.Y. 2012) (dismissing interference claim related to donated time); *Kilcrease v. Coffee Cnty., Ala.*, 951 F. Supp. 212, 215 (M.D. Ala. 1996) (same).

MDHS's argument is legally correct – a "plaintiff's subjective belief, without more, that an adverse employment action was retaliatory is insufficient to survive summary judgment." *Vicknair v. La. Dep't of Pub. Safety & Corr.*, 555 F. App'x 325, 331 (5th Cir. 2014) (citation and quotation marks omitted). But in her response, Houston makes other arguments, including arguments based on the timing of the various employment decisions and the propriety of those decisions. *See generally* Pl.'s Mem. [42] at 34–37. MDHS offers no rebuttal to any of Houston's arguments in this regard, and makes no reference to the FMLA claims in its reply.

It is again tempting to address Houston's arguments, but that would require a deep dive into the record evidence and legal issues that neither party has briefed. It would also require notice to Houston and an opportunity to respond. *Arkwright-Boston Mfrs. Mut. Ins. Co.*, 932 F.2d at 445. Accordingly, the Court concludes that the issue should be carried to trial.

E.  Title VII Constructive-Discharge Claim

To support her constructive-discharge theory, Houston essentially offers the same conduct forming the basis of her harassment claim. According to MDHS, these facts fail to make a *prima facie* case for constructive discharge. As stated in *Brown v. Kinney Shoe Corp.*:

> A resignation is actionable under Title VII . . . only if the resignation qualifies as a constructive discharge. To prove a constructive discharge, a plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign. . . . Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim. Discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge . . . .

237 F.3d 556, 566 (5th Cir. 2001) (citations and internal quotation marks omitted). Those non-exclusive aggravating factors were listed in *Lauderdale*:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status].

512 F.3d at 167.

In this case, MDHS argues that the only aggravating factor Houston presents is harassment and that the harassment alleged is insufficient even if true   the Court agrees. Numerous Fifth Circuit cases have rejected similar claims. For example, in *Perret v. Nationwide Mutual Insurance Co.*, two employees claimed their employer "did not fairly evaluate their compliance with the coaching plans and PIPs, and that the result of the coaching plans and PIPs was intended to be and would inevitably have been termination." 770 F.3d 336, 339 (5th Cir. 2014). The Fifth Circuit found that this was not sufficient and reversed a jury verdict in the employees' favor. *Id.*

An even tighter fit occurred in *Haley v. Alliance Compressor LLC*, where the employee claimed that her employer fabricated deficiencies in her work performance, set an overly strict performance plan; threatened to fire her, micromanaged her work, excluded her from department meetings, and ridiculed her in front of coworkers. 391 F.3d 644, 650, 653 (5th Cir. 2004). The employee also produced evidence "tending to show her superiors' intent to remove her from her job while she was on leave," though that never happened. *Id.* at 652. After noting that the employee failed to show an aggravating factor other than "badgering, harassment, or humiliation," the Fifth Circuit held that she failed to create a jury question on constructive

discharge. *Id.* at 652 53; *see also Brown v. Liberty Mut. Group, Inc.*, No. 14-10219, 2015 WL 1609141, at *2 (5th Cir. Apr. 10, 2015) (citing *Haley*, 391 F.3d at 653).

Even with more severe aggravating factors, the Fifth Circuit has previously held that no constructive discharge occurred as a matter of law. *See Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 772 (5th Cir. 2001) (affirming summary judgment where employee was placed on different shift and lost compensation); *Brown v. Bunge Corp.*, 207 F.3d 776, 782 83 (5th Cir. 2000) (same where employee was demoted and had fewer job responsibilities); *Bozé v. Branstetter*, 912 F.2d 801, 805 06 (5th Cir. 1990) (same where employee suffered poor performance evaluation and loss of responsibilities similar to demotion).

Viewed in a light most favorable to Houston, the present conduct is no more severe than that in *Haley*. The Court therefore concludes that Houston has not met her burden on this aspect of her claim.

IV.   Conclusion

The Court has considered the parties' arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, MDHS's Motion for Summary Judgment [38] is granted as to the state-law claims, Americans with Disability Act claims, Family Medical Leave Act interference claim, and claims related to alleged constructive discharge. The parties are instructed to contact the Courtroom Deputy to set the case for pretrial conference.

**SO ORDERED AND ADJUDGED** this the 18th day of September, 2015.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE